Allmax Nutrition. Hopefully we'll see you again, Mr. Jones. Thank you, Judge. Mr. Parsley. Yes, Your Honor. May it please the Court, Bob Parsley with Miller & Martin for the appellant, Hi-Tech Pharmaceuticals. The Court should reverse and remand. This case involves protein spiking of dietary supplements. The case was dismissed under 12b-6. And there are two points I'd like to convince the Court about. First, the District Court incorrectly required product testing under FDA regulations as a pleading requirement to be able to state a claim under the Lanham Act and Georgia's Deceptive Trade Practices Act. It seems to me that you've got one good argument and one bad argument. Your bad argument is on preemption by the Food and Drug Act. Your good argument is about the Lanham Act. This is just a pleading issue, and it could be that a label that complies with the Food and Drug Act nevertheless is misleading for purposes of the Lanham Act. The Palm case, the Supreme Court made that clear. It seems like, to me at least, your complaint has a lot of problems that haven't necessarily been raised by your adversary that might have to eventually be sorted out, like whether you really alleged enough to state that there's been an injury to your client, but in terms of whether there could be this complaint sufficient to state that the label's misleading, at least the way I look at the case, that's your better argument. I agree. I'll say one thing about testing. The FDA is the sole enforcer of the statute and all the regulations, and when you read the regulations, it talks about the manufacturer having to maintain records and do all these things because the FDA does not give pre-approval, so the company has to do a lot of things because the FDA may come in there later on and say you're violating the law or violating the regulations. That's right, Your Honor. It would be— I personally agree with it. The testing is irrelevant.  Right, and I would like to disclose the Ninth Circuit addressed this very question just about two weeks ago in a case that— On testing? Yes, Your Honor. A very on-point case which I would like to disclose under Rule 34-4. I provided a copy to opposing counsel this morning. It's Durnford v. Muscle Farm Corp. Is it a published opinion? It will be, Your Honor. Like I said, it just came out about— We don't have a federal citation yet. No, Your Honor. I have copies here that I can submit to the court. Well, you can submit that by letter. Thank you, Your Honor. We'll do a 28-J letter. But the Durnford case is right with this panel on that the testing requirement really should not be viewed as a pleading requirement for a Lanham Act case. Now, I would like to change Judge Pryor's opinion on preemption. Well, you're going to have a hard time with that. Well, that's why I'm paid for, Your Honor. I understand. Preemption applies where the claim would impose— We have an express preemption provision. There is an express preemption provision, and if the state or other requirement is not identical to the FDA requirements, it's preempted. The amount— Well, what you're saying, and I believe this dovetails with the judge's previous comment about the Lanham Act, correct me if I'm wrong, is that the Food and Drug Act doesn't preempt the state law claim as to whether or not the label is misleading. You could probably go forward on that, but it seems to me that if your claim is premised on requiring the defendant to disclose a different amount of protein, then that would indirectly impose a nutritional requirement that differs from the federal requirement, and that's preempted. It's straightforward. I don't contest that point for purposes of this argument. What the point is is there is a claim that is made about the label being misleading for reasons other than the amount of protein, and that's the composition of the protein. Yeah, but so your claim would impose a duty to include a statement disaggregating the sources of the total protein content figure. The FDA or the FDCA, the Act, doesn't require that statement. It doesn't require it, but— And it permits the parties to calculate protein content based on nitrogen content. That is correct. It permits them to calculate it based on nitrogen content. And what you want to do is to impose a nutrition information requirement that is not identical with those of the Act. No, Your Honor. That is not what we ask. What we ask is that the label simply not be misleading. And that's a Lanham Act claim. That's a Lanham Act claim. And the way a non-precluded, non-preempted claim is stated here is that the label leads a reasonable consumer to believe that the 25 grams of protein doesn't include these lesser quality amino acids. Isn't your argument under Gupta the same thing basically in terms of misleading? Yes, Your Honor. Exactly the same? Yes, Your Honor. It's a different legal relationship. The regulation, I forget the number, says that it may be misleading if the product contains other things or whatever it is. 101.18. Yes, that's right. For other reasons. And the reason is the label said it equates 25 grams of whole protein, not the lesser quality, cheap protein. It equates that with the product and then states it is also fortified with five amino acids. That causes a reasonable consumer to believe there are 25 grams of the super expensive great protein and that the amino acids are added onto that. That's the misleading point. The nutrition facts panel, supplement facts panel that says 25 grams of protein, we're not contesting that that is a violation of the regs. The regulation is the labeling of a food which contains two or more ingredients, which this label does. Yes. It may be misleading by reason among other reasons of the designation of such food and such labeling by a name which includes or suggests a name of one or more but not all such ingredients, even though the names of all such ingredients are stated elsewhere in the labeling. That's right. It's pretty poorly worded, but as I read it, that's what we have here. We have a Lanhamac claim that is consistent with the FDA regulations. That's the Gupta claim. The Gupta and Lanhamac claim both. I understand that, but my understanding is that your Gupta claim is not preempted because this regulation is essentially the same as the Gupta argument. Correct. It's misleading. That's correct. Am I wrong? No. That's what the claim is. The claim is that the label is not preempted because this regulation is essentially the same thing. The state law claim would not require the court to impose any requirement that is inconsistent with the FDA regs. The regs don't only require total protein. That's right. And your pleading would require disaggregation. No, Your Honor. No. When it says it is also fortified with five amino acids on the front label, it makes the consumer think those amino acids are added to 25 grams of whole protein. The consumer should not be required to go to the supplement facts panel to figure that out. So you would require that the label explain what the sources of protein are. It would require them not to make a misleading statement on the front of the label. What's misleading? As a matter of law, the label doesn't have any language suggesting that the 25 grams of protein come exclusively from the six-protein blend. It doesn't say anything like that. And then the front of the label says there are six, quote, six ultra-high quality proteins and, quote, five amino acid blend with BCAAs, close quote. And then the back of the label shows 25,000 micrograms of protein per serving and that it's based on a number. It doesn't seem like there's anything false here. It's the overall net impression, Your Honor, of equating the product itself with the ultra-high quality protein blend. And then the statement, which is crucial, and which is not contained in some of these other cases that are referenced, also fortified with amino acids are added on to the 25 grams of whole protein, is the impression that is false. Correcting that impression would be consistent with both the FDA's requirement not to mislead and it states a Lanham Act claim and a Georgia Act claim. I'll pass it to my adversary and take up my rebuttal.  Thank you, Your Honor. A few points. We do believe that at bottom this case is about a substantive disagreement by plaintiffs with the FDA about how protein should be disclosed. They obviously believe that it should only be counted if it's from a whole protein source. The FDA concluded otherwise. Right, wrong, or indifferent, that's the FDA's conclusion. And the Applees, our client's labels, accurately state the protein content as required to be calculated by the FDA. There's no dispute about that. So on the first claim, the 25 grams versus 19 grams claim, we think that is clearly preempted and I don't hear substantive disagreement about that in the room. On the... Not with the three of us. Pardon me? Not with the three of us. And I didn't hear my adversary argue that 25 versus 19 standing alone was a basis to go forward that was not preempted. The argument that I did hear... Your argument, as I hear it, is that they are trying to amend the regulations, basically. They are, Your Honor. And make you do something the regulations don't. Exactly. As I see it, they're saying, not saying that at all, they're saying you're misrepresenting to the consumer the extent of the weight in the drug. In the product, it's not a drug. Yeah. The label misleads. Correct. It's the amount of the weight that's in the 25 grams. I think that is the nature of their second claim, Your Honor, which is the one they seem to be... I understand that's a Lanham Act claim, but it sounds to me like it's the same claim under the state law, too. And under both claims, they would require us to include on the label a disclaimer or some... No, they're not requiring you to do anything. They're just saying, this is this lady. You figure out how to handle it. Your Honor, in their reply brief, they expressly say, and they pause it, and they lay out two disclaimers that they say you could pick either one of these. Well, I understand that. Well, and I think that's an important point, Your Honor. The other important point, as the Gubala cases in the Northern District of Illinois recognized, is that the FDA, when they were taking comments on these regulations, were given comments that said the source of protein ought to be disclosed. If you're going to adopt this nitrogen-based method, you ought to make people disclose the source of the protein. That was submitted to them. They declined after notice and comment, and in full accord with the Administrative Procedures Act, they rejected those comments. They said, we do not believe that requirement is appropriate. We do not believe that is necessary. It is sufficient to state the protein is calculated by this method. So we do think this is going right at the heart of what the FDA has considered, decided, and not required. The second point I'd like to make about this is that no case that has been cited by the appellants or that we are aware of has found that there has been a plausible allegation of a misleading label based on a label of this kind. Simply put, there's no misstatement on this label. There is nothing to say that all 25 grams of protein come from whole protein sources. You're not talking about your Lanomac defense here now, are you? You're talking more about the Gupta. I'm talking, Your Honor, both about Gupta and the Lanomac. Well, let me ask then briefly, both of you speak at length about POM Wonderful versus Coca-Cola. Right. And I think the Supreme Court was pretty clear there that the Food and Drug Act doesn't preclude a Lanomac claim as long as the two can coexist. It seems to me, I mean, I don't know, but perhaps the district judge let go of the Lanomac case prematurely. Perhaps you may be right about what the label says and doesn't say, but it seems to me that perhaps we ought to accumulate facts and make a neutral factual determination, not as a matter of law, about whether or not the label was false. And, Your Honor, I agree with your reading of the POM Wonderful case. It says that the Lanomac claims under the Lanomac are precluded, not preempted, but precluded, in certain circumstances where there would be a direct irreconcilable conflict with what the FDA requires. That's why we think the 19 verse 25 fails under that claim as well. The district court, I think correctly, the district court did not rely on preclusion in dismissing the Lanomac, the second part of the claim under the Lanomac, the second part being this composition claim. The district court correctly found that no reasonable consumer could read this label to state that the 25 grams of protein all came from whole protein sources, which is their claim. The district court found, as a matter of law, that no reasonable consumer could do that based on review of the label, and that, we submit, was a correct conclusion. And that's what I was saying a moment ago. No case that has been cited allows a claim like this to go forward where the label does not make some affirmative misrepresentation by way of either the name of the product. As I understand it, what they're arguing is that the label would suggest that the 25 grams all comes from the whey, and the whey protein isolate. And when I look at the label, I think maybe a consumer would think that. I mean, to me, there are a whole bunch of reasons why I think that claim is ultimately going to fail, some of which I don't know that you've raised, even in the district court. But at least as to that point, which is what goes to the heart of what the district court said, I think they have a point. I agree with you, Your Honor. I'm sorry. I didn't mean to interrupt. No, that's fine. No, I'm done. I agree with you that there are a lot of reasons that the claim fails, and I agree with you that we didn't raise all of them because in one motion you can only do so much. And I also will say that the nature of this claim was not clear when it is morphed over time in the briefing. But to the point that the district court did rule on, which was this doesn't plausibly allege what you just said, which is that a reasonable consumer could think that all 25 grams come from whey, here's why. When you look at the cases that are cited here, the Bruaner case, the defendant's advertising affirmatively said, hey, we don't count nitrogen in our protein count. So there's an affirmative statement in the advertising that goes well beyond anything on the label and makes a representation. We're not counting the nitrogen. The allegation was, well, you are counting the nitrogen. So that's a clearly deceptive statement. In the Gubala v. CVS case. Are we supposed to take the advertising into account along with the label? There's no advertising pled here, Your Honor, that's the point. I understand. The point here is there's all their. All we're dealing with is the label. All you're dealing with is the label. And when cases, many of the cases they rely on. They have some problem about whether or not it's misleading as to the amount of whey in the 25 grams. Right. And our point is a federal case with the federal discovery requirements and that machinery cannot be set into motion unless there's a plausible. This is under Iqbal and Twombly. Unless there's a plausible claim, a plausible claim that a reasonable consumer could be misled by this. We understand that. I drink protein shakes and drink one after we finish today. And when I look at the label, I think maybe a consumer could think that it all comes from it. Your Honor, the label makes no statement that it all comes from the whey. All right. The label does not. I didn't say it was false. Right. But it's not even. The question is whether I might be misled. Right. And we submit that no reasonable consumer could be misled. It discloses the presence of the BCAAs. When you look at the back panel on the label, what sums to 25,000 micrograms includes the BCAAs. So they're clearly included there. The protein panel, which is shown on page 8 of the appellant's reply brief, includes the BCAAs in talking about the hexaprobe blend. So it's clear that it's in there. The case that they just raised, the recent Ninth Circuit case, Durnford, which my adversary was kind enough to hand me a copy of when we walked in this morning. It's from the Ninth Circuit on October the 12th. The label there, which they did allow to go forward on a misleading label allegation, says 40 grams of a potent blend of hydrolyzed beef protein and lactoferrin protein. So there again the label has an affirmative statement of what the protein blend is, where that 40 grams comes from. There is no equivalent statement here. In the protein panel, which again is on page 8 of the reply brief, the panel that talks about the protein, there's no statement in there about 25 grams. There's nothing saying that all 25 grams comes from this six-protein blend. It is simply one of the ingredients. To return to some of the other cases, the blue bubble. Can I just clean one small thing up, which I think we all agree on? Of course. Your argument here presupposes a legal finding that the Food and Drug Act doesn't preclude the Lanham Act claim as to the misleading nature of the—I'm not sure you've conceded that. I have not conceded it, but I have not been addressing it to date. The one thing that I would point out in that regard is that the regulation they're relying on is saying they're harmonious with this, which is 101.18B. It was discussed a moment ago. Talks about products where the name of the food, the name implies that it's composed of only one thing, where in fact there's another thing in there. And indeed, other cases where they're not relying on the advertising or an express statement on the label like 40 grams of protein from these two things, where they also—people can get into trouble—is where the name runs afoul of this regulation, where the name, as in the Gubala versus CVS case, was an all-whey protein powder. And they said, well, there, it's called whey protein powder. The consumer might reasonably think that all of the grams listed come from whey, not our name. The name—and they below alleged, incorrectly below, that this was a name problem. When we pointed that out, they backed off on it. They've alleged in the opening—the initial brief here said it was a statement of identity. We pointed out that it's not a statement of identity. That's not correct. And the name of the product, which is hexapro, does not name it as a protein. So we do think that they're in conflict with that. They can't find a safe harbor under that regulation to be consistent with the FDCA Act for their Lanimec claim. But we also submit, for the reasons I've been talking about, that the district court properly concluded there just isn't enough here. And there is no case that has been cited where a label on a total impression theory, which is what they're advancing, without anchoring it in specific statements that are at least found to be misleading, if not actually false, was allowed to proceed to discovery. The Blue Buffalo case left some claims in based on advertising where the claim was that this—you falsely implied there's bacon in the product or the product is mostly bacon. They pointed to advertisements that had 10 images of bacon, and the word bacon was said umpteen times. The advertisements swamped the impression for the consumer. They dismissed in that case a claim, not based on preemption, just based on not plausibly pled, based on the statement on the label filet mignon flavor. They said, right, that doesn't say that there's filet mignon in there. No reasonable consumer could conclude from that that there is actually filet mignon if all you're saying is it has flavor. So courts do draw this distinction about plausibly alleged misleading impression versus not routinely. And to our knowledge, they have never drawn one without a problem with the name, without misleading or false statements in the advertising or on the label itself. You've got 25 grams of protein right next to the ultra-premium six-protein blend. And as I understand their allegation, their allegation is that that could deceive the consumer into believing that the 25 grams comes all from the six, the ultra-premium six-protein blend. And again, Your Honor, one, we have the label. Fortunately, it's on page six of their brief. I've seen it in the briefs. It's not right next to it. It's below it. It's equally right next to a thing that says huge three-pound size. Yeah, huge three-pound size is also right next to ultra-premium protein blend. Are they going to allege next that this is alleging that we have three pounds of protein? No. We have 25 grams of protein, and we have it from all of the sources that are listed on the label. So all I will say is this court will be breaking new ground in allowing a claim to go forward based on this sort of total impression theory with no anchored statement in the name or the advertising that has been identified. Mr. Parsley. Thank you. Me, the Me case, M-E-E-2, Brawner, Gubalo v. CVS2, and the recent Ninth Circuit opinion in Durnford all support the proposition that from a legal conceptual standpoint that a protein composition claim as opposed to just calculating the amount can state a non-preemptive claim. And I think that to the extent this panel disagrees with that, I ask the panel to especially pay careful attention to the recent Ninth Circuit case. I think... Sometimes the Ninth Circuit persuades us, not often. Occasionally the Ninth Circuit gets it right. So from a legal standpoint, I think we're there, should be there. The question is, does this particular label mislead consumers? Is there anything we don't understand about your case? One thing I would like to mention is the case has warts on it and the pleading and some of the other proceedings, we concede that. Not a, as the U.S. Supreme Court said in Skinner's, not a model of a careful drafter's art. But when it comes to the merits, which we ask this court to pay attention to, in substance, the claim is stated. The overall impression of this label... I think we understand your point. ...is added to. That's right. If the court has any further questions, I'd be happy to address them. If not, we will submit a 28-J letter on the Durnford case, allow counsel to respond. Thank you.